**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

MILLVILLE SAVINGS BANK,

        Plaintiff,

   v.

MALVERN BANK, NATIONAL
ASSOCIATION,

        Defendant.

Civil No. 21-13001 (RMB/AMD)

**OPINION**

**APPEARANCES**

Douglas Godron Leney
Archer & Greiner, PC
1025 Laurel Oak Road
Voorhees, New Jersey 08043

    *On behalf of Plaintiff*

Jerrold S. Kulback
Archer & Greiner, PC
One Centennial Square
East Euclid Avenue
Haddonfield, New Jersey 08033

    *On behalf of Plaintiff*

Andrew J. Soven
Holland and Knight LLP
2929 Arch Street
Cira Centre, Suite 800
Philadelphia, PA 19104

    *On behalf of Defendant*

**RENÉE MARIE BUMB, United States District Judge**

This matter comes before the Court upon the Motion to Dismiss filed by Defendant Malvern Bank, National Association. [Docket No. 5.] For the reasons expressed herein, the Court will grant Defendant's Motion in its entirety.

## I.    BACKGROUND

On April 6, 2017, Defendant (also referred to as "Lead Bank") loaned $16,727,000.00 (the "Loan") to non-party HFZ Highline Retail Owner, LLC. [Docket No. 1-1, Exh. A, § 1.] Plaintiff Millville Savings Bank (also referred to as "Participant") agreed to purchase an 8.97% interest in the LPA. [*Id.*, § 2.] The LPA permits Plaintiff to, "in its sole discretion, option to have [Defendant] repurchase its participation in the Loan after a period of 90 days from [Plaintiff's] disbursement of funds to [Defendant]." [Docket No. 1-1, ¶ 6 (quoting Docket No. 1-1, Exh. A, § 2).]

Plaintiff alleges that it "disbursed its funds to Defendant to purchase the participation interest on June 26, 2018" and then sought to "exercis[e] its right to have Defendant repurchase its participation interest in the Loan" on December 30, 2020. [*Id.*, ¶¶ 7–8.] However, Plaintiff alleges that "Defendant has failed and refused to repurchase its participation interest in the Loan." [*Id.*, ¶ 9.]

Moreover, the LPA provides the following in Section 17:

**17. Lead Bank's Liability; Indemnification**. In administering the Loan and dealing with the Loan Documents and collateral therefor, Lead Bank will exercise the same care as Lead Bank exercises in the care of loans in which Lead Bank alone is interested, but Lead Bank makes no representation and assumes no responsibility with respect to the due execution, legality, sufficiency, validity, collectability, or enforceability

2

of the Loan, the Loan Documents or any of the collateral therefor, or as to the truth, correctness, validity or enforceability of any provision contained in the Loan Documents or in any instrument, certificate, opinion or other document delivered or to be delivered to Lead Bank in connection with the Loan. So long as Lead Bank acts in good faith, Lead Bank will incur no liability whatsoever to Participants and will be responsible only for gross negligence or willful misconduct by Lead Bank. Lead Bank will have the right to consult with legal counsel, independent public accountants and other experts of Lead Bank's choice and may rely upon any written statement that it believes to be genuine and correct and to have been signed and sent by the proper party or parties and Lead Bank shall be fully exonerated from liability for any action taken in good faith in accordance with any such advice or written statement. The Participant agrees to indemnify the Bank (to the extent not reimbursed by the borrower) from and against any and all liabilities, obligations, losses (excluding loan losses as a participating lender), damages, penalties, actions, judgments, suits, costs, expenses or disbursement of any kind or nature whatsoever which may be imposed on, incurred by or asserted against the Bank in any way relating to or arising out of any action taken or omitted to be taken by the Participant with respect to the Participant Agreement or the Loan Documents, provided that the Participant shall not be liable for any portion of such liabilities, obligations, losses, damages, penalties, actions, judgments, suites, costs, expenses or disbursements resulting from the Bank's gross negligence, willful misconduct or breach of this Agreement.

Bank agrees to indemnify Participant (to the extent not reimbursed by the Borrower) from and against any and all liabilities, obligations, losses (excluding loan losses incurred as a loan participant), damages, penalties, actions, judgments, suites, costs, expenses or disbursement of any kind or nature whatsoever which may be imposed on, incurred by or asserted against Participant in any way relating to or arising out of any action taken or omitted to be taken by the Bank with respect to this Participation Agreement or the Loan Documents, provided that the Bank shall not be liable for any portion of such liabilities, obligations, losses, damages, penalties, action, judgments, suits, costs, expenses or disbursement resulting from the Participant's gross negligence, willful misconduct or breach of this Agreement.

If any claim, action or proceeding is made or instituted by or against a party entitled to indemnification above (the "Indemnitee") the Indemnitee shall promptly notify the party liable for indemnification ("Indemnitor") thereof. A failure to give such notice shall not limit the

3

obligation of the Indemnitor under this Section except to the extent the Indemnitor shall be prejudiced by the failure to have received timely notice. The Indemnitee shall have the right to conduct and control, through counsel of its choosing the defense of any claim, action or proceeding to which this Section applies, and the Indemnitee may compromise or settle the same, provided that the Indemnitee shall give the Indemnitor advance written notice of any proposed compromise or settlement that shall obtain the consent of the indemnitor to such proposed compromise or settlement, which shall not be unreasonably withheld. The Indemnitee shall permit the Indemnitor to participate in the defense of any such claim, action or proceeding through counsel chosen by such Indemnitor, provided that the fees and expenses of such counsel shall be borne by the Indemnitor. The Indemnitor shall not be permitted to settle any claim, action or proceeding to which this Section applies without the prior written consent of the Indemnitee.

[Docket No. 1-1, Exh. A, § 17.]

The LPA also stipulates that it "will be construed in accordance with and be governed by the laws of the State of Pennsylvania." [*Id.*, § 29.]

As a result of Defendant's alleged non-repurchase of Plaintiff's participation interest in the Loan, Plaintiff filed the operative Complaint in the Superior Court of New Jersey, Law Division, Cumberland County on May 26, 2021. [Docket No. 1-1.] The Complaint alleges two Counts: Breach of Contract (Count I) and Breach of Covenant of Good Faith and Fair Dealing (Count II). [*Id.*] Both Counts seek "attorneys' fees and costs of suit" among other forms of relief. [*See id.*]

Defendant removed the matter to this Court on June 25, 2021. [Docket No. 1.] Defendant then filed the pending Motion to Dismiss on July 16, 2021. [Docket

No. 5.] Plaintiff timely filed its brief in opposition on August 24, 2021. [Docket No. 8.] Finally, Defendant timely filed its Reply on August 31, 2021.[1] [Docket No. 9.]

## II.   JURISDICTION

The Court exercises subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332.[2]

## III.   LEGAL STANDARD

When considering a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff. *Evancho v. Fisher*, 423 F.3d 347, 351 (3d Cir. 2005). It is well-settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." *Bell Atl.*

---

[1] This matter was initially assigned to the Honorable Robert B. Kugler. It was reassigned to this Court on October 19, 2021, after the Motion was fully briefed. [Docket No. 10.]

[2] Diversity of citizenship exists because Plaintiff is a citizen of New Jersey and Defendant is a citizen of Pennsylvania. [See Docket No. 1, ¶¶ 6–11.] The amount in controversy exceeds $75,000 because Plaintiff's interest in the Loan amounts to $1,500,000. [See id., ¶ 14.]

*Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (citations omitted) (first citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957); then citing *Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994); and then citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

> To determine the sufficiency of a complaint, a court must take three steps. First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Third, "whe[n] there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

*Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011) (alterations in original) (citations omitted) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 664, 675, 679 (2009)). A court may "generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).

A district court, in weighing a motion to dismiss, asks "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim." *Twombly*, 550 U.S. at 563 n.8 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)); *see also Iqbal*, 556 U.S. at 684 ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ."); *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) ("*Iqbal* . . . provides the final nail in the coffin for the 'no set of facts' standard that applied to federal complaints before *Twombly*."). "A

motion to dismiss should be granted if the plaintiff is unable to plead 'enough facts to state a claim to relief that is plausible on its face.'" *Malleus*, 641 F.3d at 563 (quoting *Twombly*, 550 U.S. at 570).

## IV.   ANALYSIS

Defendant makes two arguments in its Motion: (1) that Count II must be dismissed under Pennsylvania law as duplicative of Count I and (2) that Plaintiff's claim for attorneys' fees and costs must be dismissed because the LPA does not explicitly entitle Plaintiff to such fees and costs. [See Docket No. 5-1, at 4–6.] Plaintiff consents to the dismissal of Count II, provided "that the facts forming the basis for such count and recited therein be subsumed and incorporated into the remaining counts of the Complaint." [Docket No. 8, at 1.] Therefore, the Court will grant that aspect of Defendant's Motion, and the only remaining issue is whether Plaintiff is permitted to seek attorneys' fees and costs.

Pennsylvania subscribes to "the American rule, per which there can be no recovery of attorneys' fees from an adverse party in litigation, absent express statutory authorization, clear agreement by the parties, or some other established exception." *Doctor's Choice Physical Med. & Rehab. Ctr., P.C. (Laselva) v. Travelers Pers. Ins. Co.*, 634 Pa. 2, 12 (2015) (citing *Herd Chiropractic Clinic v. State Farm Mutual Automobile Ins. Co.*, 619 Pa. 438, 450 (2013)). Here, Plaintiff argues that there is a "clear agreement between the parties" that entitle it to attorneys' fees: the second paragraph of Section 17 of the LPA. [Docket No. 8, at 3–6.] Conversely, Defendant argues that "[w]hen the entirety of Section 17 is considered, it is clear that Section 17

applies only to third-party claims asserted against [Plaintiff] or [Defendant]."
[Docket No. 9, at 3.] Therefore, the issue before the Court is one of contract
interpretation.

"In Pennsylvania, '[c]ontract interpretation is a question of law that requires
the court to ascertain and give effect to the intent of the contracting parties as
embodied in the written agreement.'" *In re Old Summit Mfg., LLC*, 523 F.3d 134, 137
(3d Cir. 2008) (quoting *Dep't of Transp. v. Pa. Indus. for the Blind & Handicapped*, 886
A.2d 706, 711 (Pa. Cmwlth. Ct. 2005)). If the language of the contract "is clear and
unequivocal, [then] its meaning must be determined by its contents alone." *Id.*
(quoting *Pa. Indus. for the Blind & Handicapped*, 886 A.2d at 711). Conversely,

> [a] contract is ambiguous if it is reasonably susceptible of different
> constructions and capable of being understood in more than one sense.
> The court, as a matter of law, determines the existence of an ambiguity
> and interprets the contract whereas the resolution of conflicting parol
> evidence relevant to what the parties intended by the ambiguous
> provision is for the trier of fact.

*Id.* (quoting *Hutchinson v. Sunbeam Coal Corp.*, 513 Pa. 192, 196 (1986)).

Moreover, "[i]ndemnity agreements are to be narrowly interpreted in light of
the parties' intentions as evidenced by the entire contract." *Consol. Rail Corp. v. Del.
River Port. Auth.*, 880 A.2d 628, 632 (Pa. Super. Ct. 2005), *appeal denied*, 898 A.2d
1071 (Pa. 2006). The Third Circuit has also held that "Pennsylvania courts require
that an indemnity agreement be strictly construed against the party asserting it."
*Kiewit E. Co. v. L & R Constr. Co.*, 44 F.3d 1194 (3d Cir. 1995) (collecting cases).
However, "[i]n addition, if an agreement is ambiguous, it is to be construed 'most

strongly' against the party who drafted it." *Id.* (quoting *Pittsburgh Steel Co. v. Patterson-Emerson-Comstock, Inc.*, 404 Pa. 53, 60 (Pa. 1961)).

Applying the above standards, the Court will find that a sufficiently "clear agreement by the parties" does not exist here. While the paragraph that Plaintiff cites is tremendously broad, the Court agrees with Defendant that, when read in context, it implicitly applies only to third-party indemnification. A recent Third Circuit case applying Pennsylvania law elucidates this point. The Court wrote that "[t]he plain, unambiguous meaning of 'indemnify' is not 'to compensate for losses caused by third parties,' but merely 'to compensate.'" *Dansko Holdings, Inc. v. Ben. Trust Co.*, 991 F.3d 494, 502 (3d Cir. 2021) (quoting *Atari Corp. v. Ernst & Whinney*, 981 F.2d 1024, 1032 (9th Cir. 1992)). The Circuit pointed to the definition of "indemnify" in Black's Law Dictionary: "To reimburse (another) for a loss suffered because of a third party **or one's own** act or default." *Id.* (emphasis in original) (quoting *Indemnity*, BLACK'S LAW DICTIONARY (11th ed. 2019)). It also noted that the Oxford English Dictionary made "no distinction between first-party and third-party indemnification." *Id.*

However, the Circuit implicitly acknowledged that if "another part of the contract would make no sense if the clause applied to first-party claims," then a court would appropriately limit the scope of the clause to apply only to third-party claims. *Id.* at 502–03; *see also, e.g.*, *Travelers Indem. Co. v. Dammann & Co.*, 594 F.3d 238, 255 (3d Cir. 2010) (holding that "the only sensible reading of" an indemnification clause that requires the indemnitor to "defend, indemnify, and hold harmless" another

9

party "evidences a requirement that third-party liability exist for the clause to be triggered"); *Equitrans Servs., LLC v. Precision Pipeline, LLC*, 154 F. Supp. 3d 189, 203 (W.D. Pa. 2015) (holding that an indemnification clause that requires one party to "defend, indemnify, and hold harmless" the other party "indicate[s] an intent to restrict indemnification obligations to third party claims").

Therefore, in this case the question becomes whether Section 17, read as a whole, could be interpreted to apply to both first-party and third-party claims. The Court finds that it cannot. Specifically, the third paragraph in Section 17 contemplates the following privileges and obligations: the Indemnitee must notify the Indemnitor when "any claim, action or proceeding is made or instituted by or against a party entitled to indemnification"; the Indemnitee may "conduct and control, through counsel of its choosing[,] the defense of any claim, action or proceeding to which this Section applies"; the Indemnitee must allow the Indemnitor to pick (and pay for) the Indemnitor's own counsel and "participate in the defense" of any claims; and neither party is permitted to settle a claim without the other party's consent. [Docket No. 1-1, Exh. A, § 17.] Each of those privileges and obligations would only make sense in the event that a third party is involved. *See Dansko*, 991 F.3d at 502–03 (implying that if an indemnification clause imposes "absurd" privileges or obligations on the parties, then it is limited to third-party claims).

Considering the indemnification language in the context of the entirety of Section 17, it becomes clear that the parties did not reach a "clear agreement" to be

entitled to attorneys' fees when suing each other for breach of contract. As the Third Circuit wrote in considering a similar clause, "the only sensible reading of [the indemnification] clause evidences a requirement that third-party liability exist for the clause to be triggered." *Travelers Indem. Co. v. Dammann & Co.*, 594 F.3d 238, 255 (3d Cir. 2010).

The Court reiterates its obligation to "strictly construe[]" the indemnification clause against the party asserting it—here, Plaintiff—and Plaintiff's obligation to demonstrate that the parties reached a "clear agreement" to be entitled to the recovery of attorneys' fees from an adverse party in litigation. Given those standards, and considering Section 17 in its entirety, the Court agrees with Defendant that Section 17 of the LPA does not entitle Plaintiff to attorneys' fees in this matter. However, the Court notes that this ruling is limited to the interpretation of Section 17 of the LPA and does not necessarily preclude either party from seeking attorneys' fees on other grounds, such as pursuant to Rule 11 or another exception to the American Rule.

## V.    CONCLUSION

Therefore, for the reasons expressed herein, the Court will grant Defendant's Motion to Dismiss in its entirety. An accompanying Order shall issue.


January 31, 2022                                                s/Renée Marie Bumb
Date                                                                 Renée Marie Bumb
                                                                        United States District Judge